BETTY SMITH, APPELLANT, V. STATE OF NEBRASKA ET AL.,
APPELLEES.

549 N.W.2d 149

Filed June 14, 1996.   No. S-94-599.

Shawn Elliott, of Mowbray & Walker, P.C., for appellant.

Don Stenberg, Attorney General, John R. Thompson, and David T. Bydalek for appellees.

WHITE, C.J., FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

The plaintiff-appellant, Betty Smith, on her own behalf and purportedly on behalf of all others similarly situated, seeks to recover from the defendant-appellee State of Nebraska income she claims to have lost as the result of being transferred, under the provisions of Neb. Rev. Stat. § 24-593 (Reissue 1995), from the employment of the city of Lincoln to that of the state. Following a trial solely on the issue of liability, the district court dismissed the suit as time barred. Smith then appealed to the Nebraska Court of Appeals. On our own motion, we, under our authority to regulate the caseloads of the two courts, removed the matter to our docket.

The sole question is whether the district court erred in ruling that the suit was not timely filed. Having been tried on stipulated facts, this matter presents only issues of law. On such questions, an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *In re Interest of Archie C., ante* p.

123, 547 N.W.2d 913 (1996); *In re Interest of Rondell B.*, 249 Neb. 928, 546 N.W.2d 801 (1996).

Section 24-593 was enacted as part of the statutory scheme which, among other things, eliminated municipal courts as of July 1, 1985, and transferred the personnel of said courts to the county courts. 1984 Neb. Laws, L.B. 13. Whereas funding for municipal court personnel had been provided by the cities in which the courts were located, Neb. Rev. Stat. § 26-106 (Reissue 1979) and *State, ex rel. Woolsey, v. Morgan*, 138 Neb. 635, 294 N.W. 436 (1940), funding for county court personnel is provided by the state, Neb. Rev. Stat. § 24-514 (Reissue 1995).

Section 24-593(1) reads:

> Any employee of a municipal court of a city of the primary or metropolitan class, except municipal judges, municipal probation officers, violations bureau staff, constables, and sheriffs, shall, on July 1, 1985, be transferred to the county court of the county where such city is located. The salary and classification of any transferred employee shall be subject to sections 24-513 [dealing with salaries of county court judges and employees and such judges' travel expenses] and 24-514 [dealing with funding of salaries, benefits, and expenses of county court judges and employees and other items], except that no employee shall incur a loss of income as a result of the transfer and any classification.

Prior to July 1, 1985, Smith was an employee of the municipal court of the city of Lincoln; on said date she, pursuant to the foregoing statute, became an employee of the state and was transferred to its employment classification and pay system. On May 30, 1991, Smith filed a contract claim with the State Claims Board, alleging that as a result, she had suffered a loss of income, more specifically, that she will receive a smaller contribution to her retirement fund from the state than she did from the city, lesser insurance benefits, and fewer paid nonworking days, and that she must work longer hours. For purposes of this analysis, we assume, but do not decide, that each of the losses claimed by Smith constitutes the loss of income contemplated by § 24-593(1).

On June 10, 1991, the State notified the claims board that it objected to the claim. Pursuant to the provisions of Neb. Rev. Stat. § 81-8,305(3) (Reissue 1994), the claims board thereafter notified Smith on June 20 that given the State's objection, it could not exercise jurisdiction over her claim. On August 9, Smith filed her district court petition.

In its answer to Smith's petition, the State asserted, among other things, that the cause of action was barred by the statute of limitations.

Neb. Rev. Stat. § 81-8,306 (Reissue 1994) provides, in part, that "[e]xcept as provided in section 25-213 [dealing with persons under legal disability], every contract claim permitted under the State Contract Claims Act shall be forever barred unless the claim is filed with the Risk Manager within two years of the time at which the claim accrued." Although Smith was transferred to state employee status on July 1, 1985, and did not file a claim until May 30, 1991, she maintains that a new cause of action accrued with each contribution to her retirement fund. The issue presented therefore is whether her cause of action accrued when she was transferred to state employee status or whether each contribution by the state to her retirement fund constituted the accrual of a new cause of action.

The point at which a statute of limitations begins to run must be determined from the facts of each case. A cause of action accrues and the statute of limitations begins to run when the aggrieved party has the right to institute and maintain suit. Generally, this is true even though the plaintiff may be ignorant of the existence of the cause of action. *Hoeft v. Five Points Bank*, 248 Neb. 772, 539 N.W.2d 637 (1995); *Upah v. Ancona Bros. Co.*, 246 Neb. 585, 521 N.W.2d 895 (1994).

Both parties cite to *Bauers v. City of Lincoln*, 245 Neb. 632, 514 N.W.2d 625 (1994), as support for their respective positions. In that case, six firefighters filed suit against the employer, seeking to have their entire respective contributions to a pension plan returned to them in one lump-sum payment. They contended that the provisions of the pension plan which permitted nondisabled firefighters, whose employment had

been terminated before the age of retirement, to collect a lump-sum return of their contributions unconstitutionally and illegally discriminated against disabled firefighters. We hereafter refer to this aspect of *Bauers* as the pension cause. Four of the six firefighters also sought to have returned to them the amounts that the employer deducted from their monthly pension benefits equal to the workers' compensation benefits they each received. Henceforth, this phase of *Bauers* is called the compensation cause. The employer denied the claims, and the firefighters appealed to the trial court. The employer filed a motion for summary judgment, which was granted by the trial court. The court found that the claims accrued on the first date each of the firefighters was placed on the pension roll and that none of them had filed their claims with the employer within 1 year of the accrual of their claims, as required by Neb. Rev. Stat. § 15-840 (Reissue 1991). The firefighters then appealed to this court.

In connection with the pension cause, the firefighters argued that once they were placed on the pension roll, the employer had a continuing obligation to pay them, and, thus, their claims accrued each month a payment became due. In rejecting that argument and affirming the trial court's judgment in that regard, we wrote:

Once the firefighters' employment was terminated and they were awarded their pensions, they became entitled to receive an installment each month and were not entitled to elect to collect a lump-sum payment. This limitation did not occur with each monthly installment, it occurred once—when each firefighter terminated his employment before he had reached the age of retirement and when such termination was not caused by death or disability.

. . . The firefighters' claims for the return of their contributions does [sic] not arise from the installments to which they are entitled. The provisions of the plan do not permit any firefighters, disabled or otherwise, to elect at any time to collect the lump-sum amount of their contributions. Instead, Lincoln Mun. Code § 2.64.024 provides that *at the time of termination* certain firefighters may elect to collect the lump-sum amount. The last act

which brought the firefighters within the provision at issue occurred when the firefighters terminated their employment.

(Emphasis in original.) *Bauers*, 245 Neb. at 642, 514 N.W.2d at 631.

However, in reversing the trial court's judgment with regard to the compensation cause, we wrote that

once the firefighters were placed on the pension roll, such firefighters became entitled to each installment of the pension. [Citation omitted.] In this respect, pension benefits are similar to installment contracts, and courts have stated that with each installment a cause of action arises from that installment regardless of when the initial breach occurred. These courts, however, have also stated that the action which may arise from a particular install-ment is limited to that installment. An injured party must bring the action within the applicable statute of limita-tions, and although the same conduct occurred in relation to installments for which the statute of limitations had already expired, the aggrieved party may not recover for such installments. The recovery of damages, therefore, is limited to the installments which fell within the period of the applicable statute of limitations. . . .

As to each pension installment from which the [employer] deducted workers' compensation benefits, the firefighters' claims to challenge the validity of such deductions accrued. [Citation omitted.] We emphasize, however, that such a claim accrued only to that particu-lar installment; the firefighters do not have a general right to challenge at any time the validity of all of the deductions that occurred. The firefighters' claims flow from the terms of the plan, together with the [employer's] actions, in deducting for the workers' compensation benefits.

*Id.* at 643-45, 514 N.W.2d at 632-33. Thus, the firefighters' claims as to the election of a lump-sum payment of their pen-sion contributions were barred because the cause of action accrued when they were awarded their pensions, but the claims as to the deductions for workers' compensation benefits (at

least for those deductions made within the statutory period) accrued each time an installment became due.

In deciding *Bauers*, we relied on *Barney v. City of Lincoln*, 144 Neb. 537, 13 N.W.2d 870 (1944). In that case, the plaintiff brought an action to recover pension benefits he maintained were due him from the employer. The plaintiff claimed that he entered the employment as a firefighter on December 10, 1923, and was continuously in that employment until November 18, 1928, when, he alleged, he became totally and permanently disabled as a result of an injury received in the line of duty. He then filed with the employer on July 27, 1942, an application for a pension, which was disallowed.

We determined that the statute of limitations barred the plaintiff's action, holding that the cause of action accrued on the date he became totally and permanently disabled. We explained:

> A pension law which provides for the payment of benefits based upon the monthly earnings of an employee, to be paid monthly upon the death, disability or retirement of the employee, does not create a continuing liability. The liability for the payment of the pension accrues when the events stated in the law occur which entitle the employee to a pension. . . . The fact that such liability is to be discharged under the provisions of the statute by monthly payments for the remainder of the life of the employee entitled thereto does not make the liability a continuing one in the sense that a new liability is created from day to day or month to month. An example of a continuing liability is where a person contracts to support another during his lifetime. In such case, every day that support is not afforded constitutes a breach,—the liability continues to exist up to the very day of the decease of the person to be supported. No analogous situation exists where the liability accrued by the happening of a certain event and the discharge of the liability thus accruing is by statute made payable by monthly installments during the remainder of the lifetime of the beneficiary.

144 Neb. at 541, 13 N.W.2d at 872.

The pension cause in *Bauers* is more analogous to the situation at hand than is the compensation cause thereof. Smith's cause of action stems from being transferred to the state's classification and pay system, not from any individual contribution the state has made to her retirement fund. In addition, the language in § 24-593(1), that "no employee shall incur a loss of income as a result of the transfer and any classification," delineates the rights of the employee at the time of transfer from city to state employee status, not on a continuing basis. While any damages Smith suffered may have increased with each contribution to her retirement fund, the cause of action itself arose from her transfer from city to state employee status.

The same reasoning applies as well to Smith's other claimed losses. As Smith's cause of action accrued on July 1, 1985, and she did not file a claim until May 30, 1991, or more than 2 years after accrual of the cause of action, § 81-8,306 bars her claim. The district court therefore did not err in dismissing her petition.

AFFIRMED.

CAPORALE, J., participating on briefs.